THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ALFONSO . BRACCO, Appellant.

*Assault committed by throwing vitriol — identification of the defendant.*

Upon appeal from a conviction under an indictment which charged the defendant with having committed an assault by throwing oil of vitriol upon the complainant, the evidence showed that the complainant was injured by vitriol, but the testimony of the complainant identifying the defendant as the thrower of the vitriol, upon which the conviction depended, was uncertain and contradicted. It appeared, however, that there was no physical impossibilities present which proved beyond doubt that his account of the assault was not true.

*Held,* that the uncertainty of the evidence did not raise a doubt as to the justice of the verdict sufficient to call upon the General Term to set the verdict aside.

APPEAL by the defendant, Alfonso Bracco, from a judgment of the Court of General Sessions of the Peace in and for the city and county of New York, rendered and entered on the 30th day of December, 1891, upon the verdict of a jury convicting the defendant of the crime of assault in the second degree.

*Chas. E. La Barbier,* for the appellant.

*Henry B. B. Stapler, Assistant District Attorney,* for the respondent.

INGRAHAM, J. :

The defendant was indicted for assault upon one Luigi Mastrangelo by throwing upon said Mastrangelo a quantity of oil of vitriol, and was tried and convicted at the Court of General Sessions before the recorder.

The defendant, on the appeal, strenuously insisted that the evidence offered on the part of the People was so uncertain and contradictory that it was not sufficient to sustain the verdict of the jury.

Upon a careful examination of the whole testimony, however, we are of the opinion that the verdict was sustained by the evidence. The fact that Mastrangelo was very seriously injured by oil of vitriol that was thrown upon his face, which caused severe burns upon his face and neck and the loss of one eye, is conceded, and the only question at issue was whether the defendant threw the vitriol.

According to the complainant's story, on the 8th of January, 1891, as he was walking up First avenue at half-past six in the morning, on the corner of Fifteenth street and First avenue, he saw the defendant, who threw something in his face; that it was just daybreak, and he recognized the defendant and that he then put his hands to his face and fell down, when the defendant ran away.

It further appeared that the complainant went to his house and was subsequently taken to the hospital; that he charged the defendant with the commission of the offense ; that the defendant was brought to the hospital and identified by him as the person who threw the vitriol upon him, and that the defendant was well known to him, having been married to his daughter. It also appeared that the defendant and complainant had had trouble before on account of a dispute between the defendant and his wife, the daughter of the complainant.

The complainant was cross-examined at considerable length, and it is claimed that his testimony on this trial was contradictory to that made before the police magistrate and statements made to witnesses who called upon him immediately after the accident.

Both the defendant and complainant were Italians, and the complainant's testimony was given through an interpreter. A careful examination of all the complainant's testimony fails to show such serious contradiction of his testimony as would justify us in holding that the case should not have been submitted to the jury.

It is clear that the complainant was injured, and it is hardly possible to imagine that he inflicted these injuries upon himself for the purpose of revenge upon the defendant, and the fact that he claimed to recognize the defendant immediately after the injury, and while he was suffering great agony, and identified him when produced at the hospital within a few hours of the time of the occurrence, is inconsistent with the claim that he did not recognize the defendant, and after the injury made up the story for the purpose of injuring him.

The defendant was sworn as a witness, and testified that on the morning of the occurrence he was in bed until seven o'clock, and produced several witnesses to corroborate his story, but I think, conceding that these witnesses testified to substantially the truth, it was not inconsistent with the commission of the crime by the defendant.

The defendant lived at 283 Mott street, and it was not at all impos-

sible for him to have gone from First avenue and Fifteenth street to his residence in a half hour.

One Lampiazi was called as a witness for the defendant, and swore that he went to the defendant's residence at about a quarter to seven on the morning the crime was committed to purchase some wine; that the defendant was then in bed, and called the witness up to his bedroom and asked him to come later, and that he (the witness) returned about a quarter-past seven and found the defendant dressing.

The witness does not attempt to fix the time with any degree of certainty; he did not look at a watch or clock, and only says it was about a quarter to seven.

The defendant himself testified that he was in bed on that morning asleep at half-past six, and did not awake until a little after seven, and that he then saw the witness Lampiazi.

None of the other witnesses called by the defendant testified to seeing him before seven o'clock. There were two witnesses called who swore that on a morning early in January of that year they were walking down First avenue, and saw a man on First avenue and Fifteenth street with his hands to his face, apparently injured, and at the same time saw another man running down Fifteenth street, and that the man running down Fifteenth street was not the defendant.

There is no certainty that these witnesses saw the defendant on that morning, or that the man that they saw running away was the person who committed the crime, and one of these witnesses stated that the complainant in the case did not look like the man he saw who was injured.

It also appeared that the defendant was engaged in the manufacture of soda water; that he used sulphuric acid, and had before that time used oil of vitriol in his business.

From this statement of the evidence it seems to be clear that a fair question was presented for the jury as to whether or not they were satisfied beyond reasonable doubt that the defendant was the person who committed the assault, and that the verdict should not be disturbed.

There are several exceptions to the admission and rejection of evidence, but they are clearly without merit and do not require notice.

I think, therefore, the judgment should be affirmed.

VAN BRUNT, P. J.:

I cannot concur with Mr. Justice INGRAHAM in the conclusion arrived at by him in his opinion as to the strength of the evidence offered upon the part of the People in the case at bar. The conviction of the defendant necessarily depended upon the evidence of the complainant, and if we are to believe his testimony in regard to his recognition of the defendant prior to the assault, then there would be no doubt of the guilt of the defendant, because the complainant testifies to a complete recognition of the defendant. It further appears from the evidence that ill-feeling had existed between the defendant and the complainant; and whether some portion of this recognition did not arise from the conclusion that because of this ill-will the assault had been made by the defendant, does not, to my mind, seem clear.

It appears from the evidence that the complainant was not a particularly reliable witness. He testifies that it was daybreak at half-past six on the morning of the eighth of January. And I suppose that the court may take judicial notice of the fact that the sun does not rise until about half-past seven in that season of the year, and the day does not break at half-past six, but it is substantially the darkest part of the night. Furthermore, the evidence of the witness in respect to subsequent recognition of the defendant is shown to be false by the proof as to his condition, which showed that it was impossible for him to have seen the defendant at the times at which he stated he did subsequent to the happening of the assault.

The point that the defendant was accustomed in his business to use vitriol, does not seem to me to be of the slightest importance upon the question of his guilt. As well might an apothecary be accused and convicted of the crime of poisoning because he was in the habit of handling poison daily in his business.

The alibi attempted to be proved upon the part of the defendant was not at all satisfactory. In fact alibis are the least reliable species of evidence offered in courts of justice. They are so easily fabricated — the change of a day or of a very short period of time, or a mere lapse of memory, will all establish an apparent alibi. But in the case at bar there seems to be no proof of so exact and convincing a character as would necessarily lead the court to the con-

clusion that the defendant was in bed when the assault occurred, as he claims to have been. But upon a consideration of the whole of the evidence, although, perhaps if I had been on the jury, I might not have come to the conclusion that the evidence established the guilt of the defendant beyond a reasonable doubt in view of the infirmity of the evidence offered upon the part of the People, I do not think there is sufficient doubt as to the justice of the verdict to call upon this court to set the same aside. The jury had the benefit of the oral testimony of the witnesses, and they were better able to judge as to the credibility to be given to such testimony, and notwithstanding the contradictions of the witness upon whose testimony the conviction depends, there were no physical impossibilities present which proved beyond doubt that his account of the assault was not true.

The conviction should be affirmed.

O'Brien, J., concurred.

Conviction affirmed.